UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

INT'L BHD. OF ELEC. WORKERS LOCAL NO. 43
PENSION, ANNUITY and HEALTH AND WELFARE
FUNDS, by Paul Kloc, as Plan Manager; *et al.*,

                    Plaintiffs,                  5:05-CV-0754
                                                (NAM/GHL)

v.

MEACHAM ELEC. CONTRACTORS, INC.; *el al.*,

                    Defendants

_____

APPEARANCES:                                     OF COUNSEL:

BLITMAN & KING, LLP                       JENNIFER A. CLARK, ESQ.
  Counsel for Plaintiffs
Franklin Center
443 North Franklin Street, Suite 300
Syracuse, NY 13204-1415

GEORGE H. LOWE, United States Magistrate Judge

## REPORT-RECOMMENDATION

      Plaintiffs commenced this action pursuant to the Employee Retirement Income Security

Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*., and the Labor Management Relations Act of

1947 ("LMRA"), 29 U.S.C. § 185(a), alleging that Defendants failed to timely remit fringe

benefit contributions and wage deductions to Plaintiffs for the period of March 2004 through

September 2004, pursuant to the applicable provisions of the parties' collective bargaining

agreement, declarations of trust, and collection policies.  (Dkt. No. 1.)  Liability on the part of

Defendants has been declared based upon their default, and the matter has been referred to me by

Chief United States District Judge Norman A. Mordue for the issuance of a Report and

Recommendation addressing Plaintiffs' entitlement to the relief sought in the Complaint,

including, *inter alia*, delinquent fringe benefit contributions and deductions, interest, additional

damages (including liquidated damages), attorneys' fees and costs.  (Dkt. No. 13.)

## I.       RELEVANT PROCEDURAL BACKGROUND

Plaintiffs filed their Complaint in this action on June 16, 2005.  (Dkt. No. 1.)  Defendants

never answered or appeared.  By Memorandum-Decision and Order dated April 24, 2006, Chief

Judge Mordue granted Plaintiffs' motion for default judgment, finding, *inter alia*, that they had

adequately alleged that Defendants violated ERISA and the LMRA by failing to timely remit

fringe benefit contributions and deductions to Plaintiffs for the period of March 2004 through

September 2004.  (Dkt. No. 13.)  In their motion for default judgment, Plaintiffs had also sought

an award of damages in the amount of the delinquent contributions and deductions, interest, an

additional amount of damages (including liquidated damages),[1] and attorneys' fees and costs.

---

[1]        Section 502(g)(2) of ERISA authorizes recovery of an additional amount of damages equal to the greater of (1) interest on the unpaid contributions to be determined by using the rate provided under the plan or (2) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the unpaid contributions.  29 U.S.C. § 1132(g)(2)(C).  Plaintiffs refer to this additional amount of damages generally as "liquidated damages."  Such a general description of this additional amount of damages appears to be common.  *See*, *e.g.*, *Perishable Food Industry Pension Fund v. Am. Banana Co., Inc.*, 01-CV-1922, 2003 21542316, at *5 (S.D.N.Y. July 1, 2003) (recognizing distinction between interest damages and liquidated damages under this section but casually referring to section as relating only to "liquidated damages").  However, I believe such a general description to be somewhat inaccurate based on a plain reading of 29 U.S.C. § 1132(g)(2)(C) and several well-reasoned decisions (which clearly distinguish between [1] damages equal to the interest on unpaid contributions and [2] "liquidated damages").  *See Jacobson v. Decora Elec. Co., Inc.*, 05-CV-4812, 2007 WL 2071563, at *5 (E.D.N.Y. June 5, 2007) (recognizing an award of additional damages under this section equal to interest on unpaid contributions, which is distinct from "liquidated damages"); *accord*, *Mason Tenders Dist. Council v. Aurash Const. Corp.*, 05-CV-1891, 2006 WL 647884, at *2 (S.D.N.Y. March 15, 2006); *Mason Tenders Dist. Council v. Envirowaste and Transcontractors, Inc.*, 98-CV-4040, 1999 WL 370667, at *2 (S.D.N.Y. June 7, 1999).  For this reason, in this Report-

(Dkt. No. 11.)  In support of their request, Plaintiffs had submitted a number of documents

introduced through an affidavit by their attorney who did not purport to have personal knowledge

(except with regard to the issue of attorneys' fees and costs).  (*Id*.)  As a result, Chief Judge

Mordue declined to enter an award of damages in the absence of evidence in admissible form

substantiating Plaintiffs' claimed damages and referred the matter to me for a hearing on

damages.  (Dkt. No. 13.)  On October 27, 2006, Chief Judge Mordue granted Plaintiffs' request

for the opportunity to submit supplemental affidavits showing damages, in lieu of a hearing.

(Dkt. No. 16.)  On December 1, 2006, Plaintiffs filed those supplemental affidavits.  (Dkt. No.

19.)

## II.      DEFAULT JUDGMENT GENERALLY

Rule 55(b) of the Federal Rules of Civil Procedure permits the entry of default judgment

against a defendant who has failed to plead or otherwise defend in an action.  Fed. R. Civ. P.

55(b); *see also Disney Enter., Inc. v. Merchant*, 05-CV-1489, 2007 WL 527921, at *1 (N.D.N.Y.

Feb. 13, 2007) (Mordue, C.J.) (citing *Parise v. Riccelli Haulers, Inc.*, 672 F. Supp. 72, 74

[N.D.N.Y. 1987]).  In such an instance, the defaulting party's failure to defend constitutes an

admission of all well-pleaded factual allegations set forth in the complaint, except as to those

relating to damages.  *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir.

1999); *Greyhound Exhibitgroup*, *Inc. v E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992).

Here, Chief Judge Mordue has found, based upon Defendants' default, that Defendants'

conduct stands in violation of ERISA, that Defendants are liable to Plaintiffs for some amount of

Recommendation, I refer to the amount of damages referenced by 29 U.S.C. § 1132(g)(2)(C) as
simply "an additional amount of damages."

damages (including delinquent fringe benefit contributions and deductions, interest, liquidated

damages, audit fees, and attorneys' fees), and that Plaintiffs are entitled to perform an audit of

Defendants' books and records.  (Dkt. No. 13.)  In his decision, however, Chief Judge Mordue

noted the Court's obligation to conduct an inquiry in order to ascertain the precise amount of

damages owed by Defendants to a reasonable certainty, and the scope of the audit, citing *Credit*

*Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999).  (Dkt. No. 13.)

In determining the proper amount of damages to be awarded upon a default judgment, it

is not necessary for a court to conduct an evidentiary hearing, provided that it takes reasonable

measures to insure the existence of a sufficient basis to conclude that the damages sought in the

default judgment were suffered as a result of the defendant's conduct.  *Fustok v. ContiCommidity*

*Servs., Inc.,* 873 F.2d 38, 40 (2d Cir. 1989); *Int'l Bhd. of Elec. Workers Local No. 43 Pension,*

*Annuity, Health and Welfare Funds v. Meacham Elec. Contractors, Inc.,* 05-CV-0754, 2006 WL

3096486, at *2 (N.D.N.Y. Oct. 27, 2006) (Mordue, C.J.).  Accordingly, when affidavits are

submitted based upon personal knowledge establishing an adequate basis for the damages sought,

an evidentiary hearing is not required, and a court may base its default judgment on such

evidence.[2]  *Transatl. Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*,

109 F.3d 105, 111 (2d Cir. 1997) [collecting cases].

---

[2]      The Second Circuit has recently noted the existence of an additional requirement,
precluding a plaintiff (when requesting the entry of default judgment) from seeking relief that is
not specified in its complaint.  *See Silge v. Merz,* 510 F.3d 157, 159-61 (2d Cir. 2007).  This
additional requirement presents no impediment in this case, since Plaintiffs' Complaint
specifically requests each of the elements of damages now sought.  (*See, e.g.*, Dkt. No. 1, "Prayer
for Relief.")

III.     **DISCUSSION**

In support of their motion for entry of judgment and an award of damages, Plaintiffs have

submitted affidavits of the following seven individuals: (1) Paul Kloc, Plan Manager of Plaintiff

International Brotherhood of Electrical Workers Local No. 43 Pension, Annuity and Health and

Welfare Funds; (2) Peter Dulcich, Training Director of Plaintiff Central New York Joint

Apprenticeship and Training Committee for the Electrical Industry; (3) Marilyn M. Oppedisano,

Chapter Manager of Plaintiff Finger Lakes New York Chapter of the National Electrical

Contractors Association, Collection Agent for Plaintiff National Electrical benefit Fund, and

Trustee of Plaintiff International Brotherhood of Electrical Workers Local No. 43 Pension,

Annuity and Health and Welfare Funds; (4) William Towsley; (5) Joseph W. McCarthy, the

accountant who conducted an audit of Plaintiffs' records; (6) Jennifer A. Clark, Esq., counsel to

Plaintiffs; and (7) Linda L. DeMacy, Legal Assistant of Blitman & King LLP, counsel to

Plaintiffs.  (Dkt. No. 11, Part 2; Dkt. No. 19, Parts 1-5, 7)  Each of these affiants swear that they

have personal knowledge of the facts set forth in, and the documentary evidence attached to, their

respective affidavits.  (*Id*.)  Among these documents provided by Plaintiffs are the applicable

provisions of the parties' collective bargaining agreement, declarations of trust, and collection

policies (hereinafter "Agreements").  (Dkt. No. 11, Parts 3-5.)

Under these Agreements (and 29 U.S.C. § 1132[g][2]), Defendants are liable for payment

of the following seven forms of damages:

**(1) Damages Owed to All Plaintiffs**: (a) the delinquent fringe benefit contributions and

deductions owed to Plaintiffs for the hours worked by the employees in question; and (b) all

auditing fees, attorneys' fees and costs incurred by Plaintiffs in calculating and collecting the

aforementioned and following debt;

**(2) Damages Owed to Plaintiff International Brotherhood of Electrical Workers Local No. 43 Pension Annuity and Health and Welfare Funds (hereinafter "Local No. 43 Funds"):** (a) interest on the delinquent contributions owed to the Local No. 43 Funds, at the rate of ten percent (10%) per year; and (b) a statutorily authorized additional amount of damages equal to the greater of (i) interest on the delinquent contributions owed to the Local No. 43 Funds at the rate of ten percent (10%) per year or (ii) liquidated damages equal to ten percent (10%) of those delinquent contributions;

**(3) Damages Owed to Plaintiff Central New York Joint Apprenticeship and Training Committee for the Electrical Industry (hereinafter "Local No. 43 JATC"):** (a) interest on the delinquent contributions owed to Local No. 43 JATC, at the rate of nine percent (9%) per year; and (b) a statutorily authorized additional amount of damages equal to the interest on the delinquent contributions owed to Local No. 43 JATC, at the rate of nine percent (9%) per year;

**(4) Damages Owed to Plaintiff National Electrical Benefit Fund (hereinafter "NEBF"):** (a) interest on the delinquent contributions owed to the NEBF at the rate of ten percent (10%) per year; and (b) a statutorily authorized additional amount of damages equal to the greater of (i) interest on the delinquent contributions owed to the NEBF at the rate of ten percent (10%) per year or (ii) liquidated damages equal to twenty percent (20%) of those delinquent contributions;

**(5) Damages Owed to Plaintiff National Electrical Industry Fund (hereinafter "NEIF"):** interest on the delinquent contributions owed to the NEIF, at the rate of nine percent

(9%) per year;

**(6) Damages Owed to Plaintiff Central New York Labor Management Cooperation Committee (hereinafter "CNYLMCC") and Plaintiff NECA-IBEW[3] National Labor-Management Cooperation Committee Trust Fund (hereinafter "National LMCC"):** (a) interest on the delinquent contributions owed to the CNYLMCC and the National LMCC, at the rate of ten percent (10%) per year; and (b) a statutorily authorized additional amount of damages equal to the greater of (i) interest on the delinquent contributions owed to the CNYLMCC and National LMCC at the rate of ten percent (10%) per year or (ii) liquidated damages equal to fifteen percent (15%) of those delinquent contributions (but not less than the sum of twenty dollars) for each month's payment of the contributions that is delinquent;

**(7) Damages Owed to Plaintiff International Brotherhood of Electrical Workers Local Union No. 43 (hereinafter "Local Union 43"):** (a) interest on the delinquent deductions owed to Local Union 43, at the rate of eighteen percent (18%) per year; and (b) a statutorily authorized additional amount of damages equal to the greater of (i) interest on the delinquent deductions owed to Local Union 43 at the rate of eighteen percent (18%) per year or (ii) liquidated damages equal to twenty percent (20%) of those delinquent deductions.  (Dkt. No. 11, Parts 3-5.)

Also among the documentary evidence provided by Plaintiffs are calculations of the damages (based upon an audit) at the foregoing rates of interest and liquidated damages.  (Dkt. No. 19, Part 5, ¶ 10; Dkt. No. 19, Part 6; Dkt. No. 19, Part 7, ¶¶ 8-9; Dkt. No. 19, Part 8.)  The

---

[3]     "NECA" stands for the National Electrical Contractors Association, Inc. "IBEW" stands for the International Brotherhood of Electrical Workers.

documentary evidence provided by Plaintiffs also support, and detail, the auditing fees and

attorneys' fees and costs incurred by Plaintiffs in calculating and collecting the aforementioned

debt.  (Dkt. No. 19, Part 5, ¶ 11; Dkt. No. 11, Part 2, ¶¶ 29-34; Dkt. No. 11, Part 5, at 27-33; Dkt.

No. 19, Part 6; Dkt. No. 19, Part 9, ¶¶ 6-9; Dkt. No. 19, Part 10.)

Based on this evidence, I recommend default judgment be entered in the total amount of

damages requested by Defendants, namely $22,886.84, which consists of (1) damages for

delinquent fringe benefit contributions and deductions in the amount of $6,788.33, (2) interest in

the amount of $2,069.01, calculated through December 4, 2006, (3) a statutorily authorized

additional amount of damages equal to $4,277.93 (referred to by Plaintiffs as "liquidated

damages"), calculated through December 4, 2006, (4) auditing fees in the amount of $1,238.50,

and (5) reasonable attorneys' fees and costs in the amount of $8,513.07, calculated through

November 14, 2006.[4]

While Plaintiffs have not sought any interest incurred during the period of December 5,

2006, through the date of entry of judgment in this action, should they do so following the

issuance of this Report-Recommendation, I recommend that such interest be awarded, assuming

---

[4]        I note that, applying the various hourly rates for legal services specified in their
affidavits (and exhibits thereto) to the time expended, Plaintiffs seek recovery of the product of
those figures, in the past often referred to as the "lodestar" amount, without seeking an upward or
downward adjustment of that sum.  In 2007, the Second Circuit abandoned its use of the term
"lodestar," and broadened the case-specific variables to be considered by a district court in that
Circuit when setting a reasonable hourly rate for attorneys' work.  *See Arbor Hill Concerned
Citizens Neighborhood Ass'n v. County of Albany*, 2008 WL 961313, at *1-2, 7 (2d Cir. Apr. 10,
2008). Applying the legal standard articulated in *Arbor Hill*, 2008 WL 961313, at *1, I find that,
based on the evidence adduced by Plaintiffs, they seek recoveries employing hourly rates for
legal services that appear to be reasonable, consonant with generally prevailing rates in this
community for legal work of the type performed, and not in need of adjustment based on the
relevant case-specific variables identified by the Second Circuit in *Arbor Hill*.

that Plaintiffs use the same rates to calculate that interest as they used to calculate the above-discussed, pre-December 5, 2006, interest.  Similarly, while Plaintiffs have not sought a statutorily authorized additional amount of damages incurred during the period of December 5, 2006, through the date of entry of judgment in this action, should they do so following the issuance of this Report-Recommendation, I recommend that such an additional amount of damages be awarded, assuming that Plaintiffs use the same rates to calculate that additional amount of damages as they used to calculate the above-discussed, pre-December 5, 2006, additional amount of damages.

ACCORDINGLY, it is

RECOMMENDED that the Clerk be directed to enter judgment in Plaintiffs' favor and against Defendants in the sum of $22,886.84; and it is further

RECOMMENDED that, should Plaintiffs (following the issuance of this Report-Recommendation) request interest and a statutorily authorized additional amount of damages incurred during the period of December 5, 2006, through the date of entry of judgment in this action, they be awarded that interest and additional amount of damages, assuming that they use the same rates to calculate that interest and additional amount of damages as they used to calculate the pre-December 5, 2006, interest and additional amount of damages discussed above in Part III of this Report-Recommendation.

Pursuant to 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b), Local Rule 72.1(c), and Fed. R. Civ. P. 6(a)(2), the parties have TEN (10) WORKING DAYS, PLUS THREE (3) CALENDAR DAYS (see Fed. R. Civ. P. 6[d]), from the date of this Report-Recommendation, within which to file objections to this Report-Recommendation.  Such objections, if any, shall be

filed with the Clerk of the Court.  **FAILURE TO FILE TIMELY OBJECTIONS TO THIS REPORT-RECOMMENDATION WILL PRECLUDE LATER APPELLATE REVIEW OF ANY ORDER OF JUDGMENT THAT WILL BE ENTERED**.  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of H.H.S.*, 892 F.2d 15 [2d Cir. 1989]).

Dated: April 23, 2008
      Syracuse, New York

George H. Lowe
United States Magistrate Judge